STATE OF VERMONT

| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 143-10-17 Vtec |
|---|---|
| Agency of Natural Resources,<br>　　　Petitioner<br><br>v.<br><br>Westford Fire District 1,<br>　　　Respondent | DECISION ON THE MERITS |

This matter arises out of Respondent Westford Fire District 1's (Respondent) failure to submit an Operation and Maintenance Manual and failure to submit monthly operating reports to the Agency of Natural Resources relating to Respondent's public community water system in Westford, Vermont. In a July 31, 2017 Administrative Order (AO),[1] the Vermont Agency of Natural Resources (ANR) alleges violations of the Vermont Water Supply Rules (VWSR), Subchapter 21-7, § 7.11 and Subchapter 21-9, § 9.1.2 and the Respondent's Permit to Operate a Public Community Water System. The AO sets out factual allegations describing Respondent's failures. The AO does not seek compliance as the Respondent has come into compliance at this time; however, ANR seeks administrative penalties of $9,000 for the violations. Respondent timely requested a hearing on the AO with this Court.

The Court conducted a merits hearing at the Vermont Superior Court, Costello Courthouse in Burlington, Vermont on February 21, 2018. Appearing at the trial were Randy J. Miller, II, Esq. representing ANR and Ryan P. Kane, Esq. representing Respondent.

**Findings of Fact**

Based upon the evidence presented at trial, the Court renders the following Findings of Fact and Conclusions of Law.

1. Respondent is a municipality of the State of Vermont, located in the Town of Westford.

---

[1] The AO was filed with the Court on October 25, 2017.

2. Respondent operates a public community water system known as the Westford Fire District 1 Water System (the System) located in Westford, Vermont, SPAN # 72022910854, WSID#VT0005450.

3. The System serves approximately 50 residential users through approximately 23 service connections.

4. On June 24, 2013, the Drinking Water and Groundwater Protection Division (DWGPD) issued the System a Permit to Operate (PTO).

5. Pursuant to the Vermont Water Supply Rule (VWSR), all public water systems shall have an Operation and Maintenance (O&M) Manual approved by the Secretary of ANR and shall be operated in a manner consistent with the approved O&M Manual. 16-3 Vt. Code. R. § 500:7.1.1.

6. The PTO required the System to submit an electronic copy of an O&M Manual for review and approval by the Secretary on or before December 31, 2013.

7. In 2013, Respondent provided an O&M Manual that was insufficient to comply with requirements.

8. Respondent failed to submit an approvable electronic copy of an O&M Manual for review and approval by the Secretary before December 31, 2013.

9. By failing to timely submit an O&M Manual, Respondent violated the PTO, Section II(B)(1) and VWSR Subchapter 21-7, § 7.1.1.

10. The delay in submitting an updated O&M Manual was partly because Respondent was considering potential physical and/or operational modifications to the system which could have required modifications to the O&M Manual. Those changes never came forward.

11. Respondent never communicated this situation to ANR.

12. Pursuant to the VWSR, all public water systems must submit monthly water system operating reports to the Secretary of ANR. 16-3 Vt. Code. R. § 500:9.1.2. This rule requires monthly reports to include data on the amount of water produced, temperature, turbidity, residual chlorine and fluoride, pH analysis, CT values, and any other information required by a specific permit. Id. The PTO here requires the reports to include daily meter reading data, and data regarding daily disinfectant (i.e. chlorine) residual entering the distribution system for each day disinfectant is introduced. PTO Section IV(B)(1).

13. These levels (especially the chlorination level) need to be within an acceptable range, meaning chlorine concentrations need to be high enough to treat water but not too high to

adversely impact human health. Without these monthly reports showing daily chlorination levels, there is the possibility of adverse health effects from concentrations of chlorine that are either too low or too high.

14. From August 2013 to September 2016, Respondent failed to file monthly operating reports.

15. Respondent did file once-per-month bacteriological data for some of this period.

16. As a result of failing to file monthly operating reports, Respondent violated the PTO, Section II(B)(5) and VWSR Subchapter 21-9, § 9.1.2.

17. On August 25, 2014, ANR provided Respondent with a written Sanitary Survey which detailed the violations at issue in this matter and advised Respondent of the need to respond to the violations and the possibility of an enforcement action.

18. On November 17, 2014, the DWGPD issued a Notice of Alleged Violation (NOAV) notifying Respondent of the PTO and VWSR violations. The NOAV instructed Respondent to submit an O&M Manual by December 19, 2014, and to begin submitting monthly operating reports by January 10, 2015.

19. In October of 2016, Respondent submitted monthly reports for January to September 2016. Respondent filed the October 2016 report in November 2016, and has submitted monthly reports on time since then.

20. Respondent filed its O&M which ANR approved on November 7, 2017.

21. R. J. Moore is a mechanical engineer and the Chairman of Respondent. As Chairman, Mr. Moore is responsible for daily oversight of the System.

22. Randy Devine is the System Operator and certified in operating a public community water system.

23. Mr. Moore understood that that the System Operator, Randy Devine, was initially filing the required monthly reports.

24. At some point communication between Mr. Devine and Mr. Moore suggested that Mr. Moore could file the reports, and Mr. Devine stopped filing the reports.

25. Mr. Moore was not initially aware that Mr. Devine stopped reporting.

26. Respondent's annual operating budget is approximately $18,000.

3

**<u>Determining Violations and Penalty Assessment</u>**

When a respondent requests a hearing on an AO, we have the authority to determine whether the alleged violation occurred. 10 V.S.A. § 8012(b)(1). In this matter, Respondent does not contest that the violations occurred. Having found violations, we are required to "determine anew the amount of a penalty" that should be assessed against the respondent challenging the ANR order. Id. § 8012(b)(4). We therefore review the evidence before the Court and determine an appropriate penalty assessment, pursuant to the eight subsections of 10 V.S.A. § 8010(b)(1)–(8).

ANR, and this Court in this proceeding, must consider seven factors when assessing a penalty:

    (1) the degree of actual or potential impact on public health, safety, welfare, and the environment resulting from the violation;
    (2) the presence of mitigating circumstances, including unreasonable delay by the Secretary in seeking enforcement;
    (3) whether the respondent knew or had reason to know the violation existed;
    (4) the respondent's record of compliance;
    (5) [Repealed.]
    (6) the deterrent effect of the penalty;
    (7) the State's actual costs of enforcement; and
    (8) the length of time the violation has existed.

10 V.S.A. § 8010(b)(1)–(8). The maximum penalty for each violation is $42,500, plus $17,000 for each day a penalty continues. Id. § 8010(c)(1). Generally, ANR treats multiple violations of the same permit, or related violations generally, as one violation when calculating penalties. We generally take the same approach.

The State may also "recapture economic benefit" that the violator may have derived from the violation, up to the total maximum penalty allowed of $170,000. Id. § 8010(c)(2). ANR did not pursue a claim of economic benefit and we do not further consider the issue.

In an effort to standardize penalties and ensure a fair process, ANR uses a form that is based on the seven factors. ANR rates the severity of the violations from 0 to 3 for factors (1), (3), (4) and (8), and determine an initial penalty score. The highest possible initial score is a 15, which equates to an initial penalty of $42,500 for a Class I violation, the maximum allowed. Classes II, III, and IV carry lower maximum penalties of $30,000, $10,000 and $3,000 respectively. The initial penalty can then be adjusted based on penalty factors (2), (6) and (7). If the violator

4

signs an Assurance of Discontinuance, agreeing not to dispute the action, the final penalty may be reduced by 25%.

Number of Violations

At the outset of the Court's penalty assessment, we recognize that the AO at issue in this matter alleges two violations: first, the failure to submit an O&M Manual for review and approval, in violation of VWSR Subchapter 21-7, § 7.1.1 and Respondent's PTO Section II(B)(1); and second, the failure to submit monthly operating reports, in violation of VWSR Subchapter 21-9, § 9.1.2 and Respondent's PTO Section II(B)(5).

ANR, and therefore this Court on appeal, has discretion to calculate and assess one penalty for events that result in more than one violation or to calculate and assess a separate penalty for each violation stemming from the same activity. In the AO at issue, ANR considered the two alleged violations in one penalty assessment. Because the alleged violations stem from same activity, that being the operation of a public community water system, we also conduct a single penalty assessment.

Class of Violation(s)

The parties do not dispute the core facts of the violations. Respondent offers that the overall classification of the violations as Class II is more appropriately a Class III violation and that there are mitigating circumstances that justify a reduced penalty. Thus, Respondent contests the amount of the ANR fine.

We conclude that the failure to submit an O&M Manual and monthly operating reports for a public community water system serving approximately 50 residential users through approximately 23 service connections present a Class II violation. Under ANR's standard Administrative Penalty Form, a Class II violation includes violations which present more than a minor violation of a statute listed in 10 V.S.A. § 8003(a) or a rule promulgated under statute listed in 10 V.S.A. § 8003(a), or a related permit. Respondent suggests that the events in this matter are more appropriately a Class III violation; that being a minor violation of a statute listed in 10 V.S.A. § 8003(a) or a rule promulgated under statute listed in 10 V.S.A. §8003(a), or a related permit.

Most notably, the monthly operating reports for a public community water system account for daily chemical levels in the drinking water supply. These levels (especially the chlorination level) need to be within an acceptable range, meaning chlorine concentrations need

5

to be high enough to treat water but not too high to adversely impact human health.  Without these monthly reports showing daily chlorination levels, there is the possibility of adverse health effects from concentrations of chlorine that are either too low or too high.  In a system serving 50 users, this presents <u>more than a minor violation</u>, and we therefore classify the violations as Class II.[2]

Calculation of Base Penalty:

*Penalty Factor 1: Actual or Potential Impact on Public Health, Safety, Welfare and the Environment*

Subsection (1) of 10 V.S.A. § 8010(b) requires consideration of "the degree of actual or potential impact on public health, safety, welfare and the environment resulting from the violation."

In considering ANR's penalty calculation form, we assign a value of "1" to the degree of impact on public health, safely, and welfare (ANR form Question 1) as we conclude there was no evidence of actual impact, however, the violations present moderate potential impact of adverse health effect from either too low or too high concentrations of chlorine.  If chlorine concentrations are too low, the water may have bacterial quality concerns.  If chlorine concentrations are too high, the human exposure has the potential for adverse health effects.  The failure to report data regarding these chlorination levels inhibits ANR's ability to ensure public drinking water is safe for consumption, resulting in a moderate potential adverse impact to public health.

 We assign a value of "0" to the degree of impact on the environment (ANR form Question 2) as we conclude there was no actual impact and minor potential impact to the environment.

*Penalty Factor 3: Whether the Respondent Knew or Had Reason to Know the Violation Existed*

Subsection (3) of 10 V.S.A. § 8010(b) requires consideration of "whether the respondent knew or had reason to know the violation existed."   The ANR penalty calculation form includes

---

[2] We understand that there is no allegation or evidence that the actual chlorine levels were too high or too low.  If that had been the case, this would likely be a Class I violation, because it would "present[] a threat of substantial harm to the public health, safety, or welfare or to the environment, or . . . has caused substantial harm to the public health, safety, or welfare or to the environment."  ANR Administrative Penalty Form.

The classification of the second alleged violation is less clear as ANR did not provide an offer on its classification.  Even though the system appears to have been operated properly, the failure to have an approved O&M manual increased the risk of the system not being properly operated which would also align with a Class II violation.

two parts related to this subsection: 3a, knowledge of the requirements, and 3b, knowledge of the facts of the violation.

Respondents knew or should have known about their legal requirements of the VWSR and the facts of the violation. Both Mr. Moore and Mr. Devine are experienced in the regulation of the public community water systems. Respondent has a PTO with clear express conditions. Thus, in considering ANR's penalty calculation form, we assign a value of "2" for respondents' knowledge of requirements (ANR form Question 3a, which assigns a "2" where respondent "had a permit or permit by rule").

As to Respondent's knowledge of the facts of the violations, we assign a value of "3," concluding there is "clear evidence that the respondent knew the violation existed" (ANR form Question 3b). For instance, Mr. Moore received and was aware of ANR's Notice of Alleged Violation and the results of the Sanitary Survey both expressly addressing the violations. Lastly, there were several e-mails to and from Mr. Moore and ANR representatives acknowledging the violations.

*Penalty Factor 4: Respondent's Record of Compliance*

Subsection (4) of 10 V.S.A. § 8010(b) requires consideration of "the respondent's record of compliance." The evidence presented shows that Respondents has no previous violations of ANR's regulations. In considering ANR's penalty calculation from, we assign a value of "0" for this subsection (ANR form Question 4).

*Penalty Factor 8: Length of Time the Violation Existed*

Subsection (8) of 10 V.S.A. § 8010(b) requires consideration of "the length of time the violation has existed." According to ANR, violations of longer than 3 years are of long duration. The violated in this matter remained in existence from December 31, 2013 to October 2016. This nearly three-year period is therefore of moderate duration. In considering ANR's penalty calculation form, we assign a value of "2", concluding that this violation existed for a moderate duration (ANR form Question 5).

In adding the above penalty scores, we arrive at a base score of 5, which equates to a base penalty of $9,000 for a Class II violation. See ANR form Question 6.

Penalty Adjustments:

We next consider appropriate adjustments to the base penalty.

*Penalty Factor 2: Mitigating Circumstances*

Subsection (2) of 10 V.S.A. § 8010(b) requires consideration of "the presence of mitigating circumstances, including unreasonable delay by the Secretary in seeking enforcement." This matter does not present unreasonable delay, as ANR continually worked with Respondent to gain compliance.

Respondent offers what it considers to be justification for both its failure to comply and its subsequent untimely compliance. First, Mr. Moore offers that the System Operator, Randy Devine, was initially filing required reports and at some point communication between Mr. Devine and Mr. Moore suggested that Mr. Moore could file the reports. Unfortunately, Mr. Moore did not understand that Mr. Devine stopped reporting. These facts lead us to conclude that the initial lack of reporting was not purposeful. Once Mr. Moore learned of the lack of reporting, however, he should have taken all appropriate action to timely report. Nevertheless, it took nearly three years for Respondent to comply with reporting requirements. There is no reasonable justification for this delay.

Mr. Moore also offers that Respondent was reporting a monthly bacterial sample result and, therefore, any potential impacts for failing to comply with reporting requirements were lessened. One monthly result is only a snapshot of the operation of the System when compared to daily monitoring. For example, these readings do not capture residual chlorine levels. Furthermore, the ANR's requirements do not allow substitution of the monthly bacterial sample reports in place of the monthly reporting of daily operations and meter readings.

As for the failure to timely provide an O&M Manual, Mr. Moore offers that Respondent did provide an O&M Manual that was insufficient to comply with requirements. Furthermore, Mr. Moore offers that Respondent was considering potential physical and/or operational modifications to the System which could have required modifications to the O&M Manual. Thus, Respondent delayed creation of an O&M Manual for many months while it retained engineers and evaluated potential changes. Those changes never came forward. While this approach is understandable from a practical or efficiency viewpoint, Mr. Moore never communicated this situation to ANR and ANR's regulations do not allow for long periods of non-compliance while public community water systems evaluate potential modifications. As such, we conclude that the delay was not warranted.

Lastly, Respondent offers that its annual operating budgets is approximately $18,000 and that a penalty of $9,000 is therefore significant. Again, while this concern is understandable, unfortunately, neither the enforcement statute, 10 V.S.A. § 8010, nor ANR's standardized calculation form consider a respondent's ability to pay. Our experience is that ANR may consider the ability to pay in resolving actions prior to trial.

Based on these facts, the Court concludes there are no mitigating circumstances to reduce Respondents' penalty.

*Penalty Factor 6: The Deterrent Effect*

Subsection (6) of 10 V.S.A. § 8010(b) requires consideration of "the deterrent effect of the penalty." The Secretary may increase the penalty amount up to the maximum allowed in the class of violation if the Secretary determines that a larger penalty is reasonably necessary to deter the respondent and the regulated community from committing future violations. Id. In this matter the maximum penalty is $30,000 and the base penalty we have calculated is $9,000, allowing for a maximum deterrent of $21,000.

In reviewing the importance of establishing a penalty that will have a deterrent effect upon Respondents, we consider that Respondents, although not timely, were cooperative with ANR throughout the investigation and resolution of the violations. The level of penalty in this matter is significant when considering Respondent's annual operating budget. We conclude that the facts of this matter do not warrant a deterrent portion to be added to the initial base penalty.

*Penalty Factor 7: State's Actual Costs of Enforcement*

Subsection (7) of 10 V.S.A. § 8010(b) requires that we consider "the State's actual cost of enforcement." The value of the time that all ANR officials committed to responding to Respondent's violations, including prosecution of this matter, totals $933.50. We direct Respondents to reimburse these costs as an additional penalty for the violations.

*Economic Benefit*

The Secretary may recapture any economic benefit Respondents may have gained by violating its permit. 10 V.S.A. § 8010(c).

While we believe that recapturing economic gain from a violation is appropriate, we conclude that based on the evidence before the Court, it appears that Respondents did not realize a gain or economic benefit from the violations. Thus, we decline to impose any amount of additional penalty relating to economic gain.

9

*Reduction for Settlement*

Finally, ANR may reduce a respondent's penalty when the respondent admits the violation and enters an Assurance of Discontinuance fully resolving the compliance issue. Such a reduction is not warranted in this matter as Respondents did not resolve their dispute by settlement.

The Court therefore arrives at the base penalty of $9,000 and adds $933.50 as reimbursement of ANR's costs of enforcement. The total penalty in this case is $ 9,933.50.

## Conclusion

For the reasons stated above, we conclude that for the violations at issue within the July 31, 2017, AO Respondents shall be liable for a total penalty of **$9,933.50**.

Electronically signed on March 7, 2018 at 10:55 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

## Rights of Appeal (10 V.S.A. § 8012(c)(4)–(c)(5))

This Decision and the accompanying Judgment Order will become final if no appeal is requested within 10 days of the date this Decision is received. All parties to this proceeding have a right to appeal this Decision and Judgment Order. The procedures for requesting an appeal are found in the Vermont Rules of Appellate Procedure (V.R.A.P.) subject to superseding provisions in Vermont Rule for Environmental Court Proceedings (V.R.E.C.P.) 4(d)(6). Within 14 days of the receipt of this Order, any party seeking to file an appeal must file the notice of appeal with the Clerk of the Environmental Division of the Vermont Superior Court, together with the applicable filing fee. Questions may be addressed to the Clerk of the Vermont Supreme Court, 111 State Street, Montpelier, VT 05609-0801, (802) 828-3276. An appeal to the Supreme Court operates as a stay of payment of a penalty, but does not stay any other aspect of an order issued by this Court. 10 V.S.A. § 8013(d). A party may petition the Supreme Court for a stay under the provisions of the Vermont Rules of Civil Procedure (V.R.C.P.) 62 and V.R.A.P. 8.